193 P.3d 438

**Frank O. LOHER, Petitioner–Appellant,**

v.

**STATE of Hawai'i, Respondent–Appellee.**

No. 27844.

Intermediate Court of Appeals of Hawai'i.

July 14, 2008.

As Corrected July 15 and July 31, 2008.

Frank O. Loher, on the briefs, Petitioner–Appellant Pro Se.

Peter B. Carlisle, Prosecuting Attorney, Brian R. Vincent, Deputy Prosecuting Attorney, on the briefs, for Plaintiff–Appellee.

RECKTENWALD, C.J., WATANABE, and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

Petitioner–Appellant Frank O. Loher (**Loher**), aka Frank Loher, appeals the Order Denying Petition for Post–Conviction Relief, filed on March 16, 2006 in the Circuit Court of the First Circuit (**Circuit Court**).[1] The

1. The Honorable Dexter D. Del Rosario presided.

Circuit Court denied without a hearing Loher's Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody, pursuant to Rule 40 of the Hawai'i Rules of Penal Procedure (**HRPP**), filed on October 18, 2005 (**Rule 40 Petition**). Loher raises numerous points of error.

## I. *PRIOR PROCEEDINGS*

### A. *The Initial Proceedings—Crim. No. 99–1621*

On August 19, 1999, Loher was charged with: (1) Attempted Sexual Assault in the First Degree, in violation of Hawaii Revised Statutes (**HRS**) §§ 705–500 (1993) and 707–730(1)(a) (1993); and (2) Attempted Kidnapping, in violation of HRS § 707–720(1)(d) (1993). Various pretrial matters were conducted, including the following that we consider in conjunction with the instant appeal.

A "Memorandum of Pretrial," dated December 9, 1999, stated that the trial was expected to take five to six days. On November 30, 1999, Loher filed a Notice of Alibi Defense. On November 13, 2000, the State of Hawai'i (**State**) filed its "Witness and Exhibit List" which identified fourteen witnesses, reserved its right to call "any and all witnesses listed by Defendant," and referenced "any persons mentioned in State's discovery materials."

Also on November 13, 2000, Loher and the State each filed a motion in limine. Loher's motion in limine sought to preclude introduction of Loher's prior bad acts, criminal record, parole status, and statements to police. The State's motion in limine sought to preclude introduction of the complaining witness's prior bad acts, previous sexual/medical history, occupation as an exotic dancer and ex-porn star, and prior allegations of sexual assault.

During the hearing on the State's motion in limine, Loher's counsel argued that he wanted to question the complaining witness about her occupation, prior sexual history, and allegations that she was a prostitute because it went directly to the issue of credibility. However, Loher also confirmed that he intended to present an alibi defense because he was not present during the alleged attempted sexual assault and attempted kidnapping. The Circuit Court granted Loher's motion in limine. The Circuit Court granted, in part, the State's motion in limine, by precluding evidence of the complaining witness's prior bad acts, sexual/medical history, occupation, and allegations of sexual assault on the ground that the information was irrelevant to Loher's alibi defense, but allowed Loher to question the complaining witness about her aliases.

On Tuesday, November 14, 2000, the State called its first witness, Honolulu Police Officer Oryn Baum, who testified that on July 29, 1999, he was dispatched to 2722 Kakoi Street where he was flagged down by the complaining witness. Officer Baum testified that the complaining witness described a man who had assaulted her and the vehicle he was driving. Officer Baum also testified that he observed a scratch on the back of the complaining witness.

Stephanie Kamakana, a fingerprint identification technician for the Honolulu Police Department, testified that four fingerprints recovered from Loher's car were of no value and that one recovered fingerprint from Loher's car did not match the complaining witness.

The complaining witness then testified that she accepted a ride from Loher, she fell asleep in the car, and when she woke up she was near Kakoi Street. She testified that Loher then demanded oral sex. As she tried to get out of the car, Loher ripped her top and left a scratch on her back. The complaining witness then called the police.

Detective Earl Takahashi testified that the complaining witness identified Loher from a photographic line up. After Detective Takahashi's testimony, the State rested its case sometime after 2:00 p.m. on the first day of trial.

At approximately 2:30 p.m., the following exchange took place among the Circuit Court, the defense attorney, Neal J. Kugiya (**Kugiya**), and the deputy prosecutor, Thalia Murphy:

> THE COURT: Record reflect the presence of counsel out of the presence of the jury. Mr. Kugiya.

MR. KUGIYA: Yes, Your Honor, making the request of the Court because of time constraints, if we can present our evidence starting Thursday morning. This is a case where there was [sic] two A felonies that the defendant's charged with. We just took opening statements this morning, and basically, I had no idea that they would finish this early, you know, because they have quite a number of people on the witness list. So at 2:30, this juncture, I tried to make a couple calls, and people cannot get here. Thursday morning they can come because that's what I told them initially. And so I apologize, but I mean, I feel that it's—it's too quick for us to have to present witnesses under the circumstances. I'm asking if we could start our case Thursday morning because people will be there, and we can finish our case Thursday.

THE COURT: You wish to make any representation?

MS. MURPHY: No, Your Honor. I will defer to the Court.

THE COURT: Under Rule 611 the Court has discretion to exercise control over the mode and order of interrogation. What the Court is going to do because there's more than enough time left in the day, we're going to continue with the trial. I'm going to allow the defense to call Mr. Loher to testify, then after he completes testifying, he can call whatever witnesses that's on call that may arrive today. We can continue with that, and then we can call the remaining witnesses on Thursday morning.

MR. KUGIYA: Okay. Well, I need to note my objection to that, Your Honor, because Mr. Loher does have a right not to testify, and based on testimony of other witnesses, there may not be a need for him to testify if we can get everything we need across from the other people. So in this vein the Court is actually forcing him to take the stand because now we have nobody to call, and you're saying, Well, we can call Mr. Loher, but as a strategic manner in planning for our case, he was going to be the last witness I call, and depending how it went with the other witnesses, we may not need to call him because we can get everything that we need through the other witnesses.

So, in fact, now that we're being forced to call him as first witness in a sense is prejudicial to Mr. Loher because he's being forced to testify when he, in essence, we had not decided fully whether or not he would testify for sure.

THE COURT: The Court does not find the argument persuasive. The Court believes that it was the responsibility or is the responsibility of counsel to determine when witnesses would be available.

Defense counsel was free to discuss with the State the witnesses called and when they would anticipate finishing their case.

Defense counsel has hopefully prepared for this case, so should be aware at the present time what the witnesses that he intends to call will testify. And having prepared and having a knowledge as to what they will say, since they are the defense witnesses, then they should be in the position to know whether the defendant should testify.

So the Court believes it is not persuasive that defense counsel should now argue to this Court, after the Court had denied his request to delay the trial till Thursday by saying that he does not know what his own witnesses will say and depending what they say, he will then make the decision whether his client's going to testify.

The Court would also note that during the pretrial conferences, as well as in the opening statement, the defendant has asserted an alibi that he was not present at the time, and that where the—his location would be during certain times defense counsel has also represented to the Court that his client is going to testify.

The Court is not persuaded by his argument and is concerned that this may be manipulative in order to obtain the relief that the Court had not granted.

In addition, throughout this trial Mr. Kugiya has engaged in certain conduct in questioning by proceeding with questions where the Court has sustained and asking the witness's [sic] questions which they have not—no personal knowledge, and then, in effect, testify by asking those witnesses who does [sic] not have personal knowledge regarding these matters.

And the Court on more than one occasion had to admonish Mr. Kugiya during the motions in limine. I had made clear to Mr. Kugiya that he was not to enter into certain areas. During this trial he proceeded to do so. In particular, asking about where the witnesses worked and now Court is faced with this situation. I do not want to make any stronger statements than that, but I am concerned.

MR. KUGIYA: Well, if I can respond.

THE COURT: Excuse me, and the Court is unpersuaded by your argument. So we're going to proceed. You may call your client to testify, or if you wish, not to testify or engage in Tachibana at this time, and he may waive his testimony. That is between you and your client. So I'm going to take a recess, and before we do that, is your client going to testify or is he going to waive his right to testify?

MR. KUGIYA: I'd like to discuss that matter with him.

MS. MURPHY: I can leave the courtroom so that they can remain here.

MR. KUGIYA: Your Honor, if I can just say we're not trying to delay this trial in any way. It's just that it was my understanding from conversations that the State would probably, you know, run the whole day. And so, you know, try not to inconvenience witnesses. I don't want them coming around today on Tuesday, knowing that we wouldn't get to them. It was my understanding that we would not start our case until Thursday, and that's why I indicated to them that we would probably start Thursday morning.

THE COURT: I understand what you're saying.

MR. KUGIYA: It's not for any purpose of delay. I would just like to say that I believe I have abided by the Court's rulings in motions in limine. I did not go into any other areas of what the Court prohibited.

THE COURT: Court will stand in recess.

When the court reconvened, Loher was called to the stand. On direct examination, Loher testified, *inter alia*, that he had served in the United States Army.[2] Loher claimed that on the night in question he visited his wife at her workplace and then went home. After Loher's testimony, the court informed the jury that it was going to adjourn for the day and reconvene on Thursday, November 16, 2000.

On November 16, 2000, Loher called his only two other witnesses, Moses Lloyd and Andrea Loher. The State then called three rebuttal witnesses. Closing arguments and jury instructions were given on November 16, 2000.

On November 17, 2000, the jury found Loher guilty of Attempted Sexual Assault in the First Degree and acquitted him of Attempted Kidnapping.

On January 11, 2001, the State filed a motion for extended and consecutive terms of imprisonment, pursuant to HRS §§ 706–661, 706–662(1), and 706–662(4)(a), and a motion for sentencing of repeat offender.

On February 21, 2001, Kugiya moved to withdraw as counsel because Loher had filed a complaint against him with the Office of Disciplinary Counsel.

On March 8, 2001, Randal I. Shintani (**Shintani**) was appointed as Loher's counsel. Shintani did not file an opposition to either the State's motion seeking an extended sentence or the motion for sentencing as a repeat offender.

2. This was problematic for Loher because, notwithstanding that he had prevailed on a motion in limine on the issue, this testimony opened the door for the prosecutor to query Loher regarding his dishonorable discharge. Arguably, other aspects of Loher's testimony proved to be problematic as well.

On July 18, 2001, Judgment was entered and Loher was sentenced to life with the possibility of parole, with a mandatory minimum term of imprisonment of thirteen years and four months. On July 30, 2001, the Circuit Court granted the State's motions to sentence Loher to an extended term, consecutive sentences, and as a repeat offender, issued Findings of Fact, Conclusions of Law and Order Granting State's Motion For Extended And Consecutive Terms Of Imprisonment, and issued Findings of Fact, Conclusions of Law and Order Granting State's Motion For Sentencing Of Repeat Offender.

### B. *The Direct Appeal—No. 24489*

On August 15, 2001, Loher filed a notice of appeal. Shintani was Loher's appellate counsel. On appeal, Loher claimed there was insufficient evidence to convict him, ineffective assistance of trial counsel, and it was error to sentence him to extended and consecutive terms. Loher's appellate counsel did not appeal Loher's "forced" testimony issue or his extended sentence based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (*Apprendi*) and its progeny. On April 21, 2003, this court rejected Loher's arguments and affirmed his conviction in a memorandum opinion.

### C. *The Rule 35 Motion*

On May 20, 2003, Loher filed pro se a Motion for Correction of Illegal Sentence, pursuant to HRPP Rule 35 (2002) (**Rule 35 Motion**). Loher alleged that the Circuit Court erred in extending his prison term, in running the term consecutively to his three continuing prison terms, and in imposing a mandatory minimum term upon him as a repeat offender. Loher argued that: (1) there was an absence of authority for piling the enhanced sentencing provisions upon the twenty-year prison term; (2) a subsection of the repeat offender statute precluded extended term and repeat offender sentencing; (3) the Circuit Court's granting of his motion in limine against the use of his prior criminal

---

**3.** Technically, this was Loher's second HRPP Rule 40 petition. On October 8, 2004, Loher filed a petition for post-conviction relief pursuant to HRPP Rule 40 in SPP 04–1–0085. However,

record and/or convictions barred the use of his prior convictions at sentencing on due process grounds; and (4) *Apprendi* and its progeny, prohibited the Circuit Court—as opposed to the jury—from finding the facts necessary to impose his extended term. Loher requested that he be resentenced to a single twenty-year prison term. On July 16, 2003, the Circuit Court summarily denied Loher's Rule 35 Motion.

On July 23, 2003, Loher timely filed a notice of appeal. On appeal, Loher raised various arguments, including the ones raised in his Rule 35 Motion. On February 11, 2005, this court affirmed the Circuit Court's July 16, 2003 order denying Loher's Rule 35 Motion. Notably, the court found that Loher's *Apprendi* argument was foreclosed by *State v. Rivera*, 106 Hawai'i 146, 102 P.3d 1044 (2004).

### II. *THE RULE 40 PETITION* [3]*—SPP 05–1–0067*

On October 18, 2005, Loher filed pro se the subject Rule 40 Petition. In this petition, Loher claimed:

(A) He was denied due process of law and the right to a fair trial because:

 (1) The Circuit Court should have instructed the jury on lesser included offenses;

 (2) Loher's conviction was obtained when the Circuit Court failed to instruct the jury on lesser included offenses and circuit court prohibited him from introducing evidence of the complaining witness's mental state or that Loher paid for prostitution;

 (3) The Circuit Court failed to instruct the jury on lesser included offenses and there was no sexual penetration;

 (4) Loher's trial counsel had a conflict of interest because his counsel had an unrelated disciplinary complaint pending;

 (5) The Circuit Court violated his constitutional rights when it communicated

---

that petition was dismissed for lack of jurisdiction because Loher's Rule 35 Motion was still pending on appeal.

with the jury without him being present;

(6) The Circuit Court erred by allowing the prosecution to introduce Loher's prior bad acts (military dishonorable discharge) despite a motion in limine prohibiting its introduction;

(7) The Circuit Court failed to give curative instruction regarding the introduction of Loher's prior bad acts;

(8) The Circuit Court granted a motion in limine which prevented him from introducing evidence of the complaining witness's "mental problems";

(9) The Circuit Court precluded introduction of the complaining witness's prior false claims and mental problems which violated his right to confrontation;

(10) Discovery was withheld from him;

(11) The Circuit Court forced him to testify;

(12) Trial counsel was ineffective because he was not prepared;

(13) Testimony about the complaining witness's boyfriend was erroneously excluded as irrelevant;

(14) The Circuit Court erred by granting a motion in limine which precluded introduction of the complaining witness's history, including prostitution and mental problems, and the jury should have received instructions for lesser included offenses; and

(15) The jury should have been given instructions on Attempted Sexual Assault in the Third Degree because there was no sexual penetration.

(B) He was denied effective assistance of counsel [4] because:

(1) Trial counsel had a conflict of interest because he was under investigation for theft;

(2) Trial counsel only consulted with Loher once prior to trial to review 200 pages of documents which demonstrates lack of diligence;

(3) Trial counsel failed to show Loher a picture of the complaining witness and only consulted with Loher once;

(4) Trial counsel never properly consulted with Loher because Loher told trial counsel during trial that the complaining witness had the same post office box;

(5) Trial counsel never properly consulted with Loher because Loher told trial counsel during trial that the complaining witness had mental problems;

(6) Trial counsel never filed any pretrial motions regarding the complaining witness's mental state and Loher should have been indicted on Attempted Sexual Assault in the Second Degree and/or Third Degree;

(7) Trial counsel never filed any pretrial motions regarding the complaining witness's prior false allegations of sexual assault and Loher should have been indicted on Attempted Sexual Assault in the Second Degree and/or Third Degree;

(8) Trial counsel never filed any pretrial motions regarding the complaining witness's mental problems and counsel should have hired an expert witness to verify the complaining witness's mental problems;

(9) Trial counsel failed to interview Loher's ex-roommates to verify his alibi;

(10) Trial counsel lied to the jury and discredited himself by claiming he was going to present an alibi defense but never did;

(11) Trial counsel denied Loher the right to be present during a jury communication with the court;

(12) Trial counsel improperly opened the door to Loher's military service despite the circuit court granting Loher's own motion in limine which precluded introduction of Loher's prior bad acts;

4. When a brief raises ineffective assistance of counsel as a point of error, HRAP Rule 28(a) *requires* service of the brief on the attorney(s) alleged to have been ineffective. In light of our disposition concerning these points of error and the other circumstances of this case, no HRAP Rule 51 sanctions are being levied at this time.

(13) Trial counsel failed to file any motions regarding prosecutorial misconduct because the prosecution introduced Loher's military discharge;

(14) Trial counsel failed to argue that the complaining witness had mental problems and that if it was proved that the complaining witness had mental problems the jury should have been instructed on Attempted Sexual Assault in the Second Degree and/or Third Degree;

(15) Trial counsel never looked into other defenses; there was evidence to argue that Loher was guilty on Attempted Sexual Assault in the Second Degree and/or Third Degree; Loher was not shown a photograph of the complaining witness until trial, and trial counsel should have consulted with Loher more than once before trial;

(16) Trial counsel failed to file any pretrial motions regarding the complaining witness's boyfriend and failed to interview him;

(17) Trial counsel only let Loher review discovery documents once and would not provide copies to him, consulted with Loher only once prior to trial, and failed to show Loher a photograph of the complaining witness;

(18) Trial counsel forced Loher to testify;

(19) Trial counsel forced Loher to testify and counsel told the circuit court that it was not his strategy to testify;

(20) Appellate counsel failed to raise appealable issues, Loher had affidavits from two ex-roommates that verified they were willing to testify; and

(21) Appellate counsel lost one affidavit and did not attempt to contact affiants.

(C) There was prosecutorial misconduct because:

(1) The prosecution improperly attacked Loher's character with prior bad acts;

(2) Loher was not properly charged because there was no sexual penetration;

(3) Discovery regarding the complaining witness's mental problems and false allegations was withheld and trial counsel only consulted with Loher once prior to trial to review documents;

(4) The prosecution took advantage of the motion in limine which allegedly precluded introduction of evidence regarding a fight between the complaining witness and her boyfriend and the prosecution then blamed Loher for all injuries sustained by the complaining witness inflicted by her boyfriend;

(5) The prosecution withheld evidence of the complaining witness's mental problems from the grand jury, if the evidence was presented, Loher should have been charged with Attempted Sexual Assault in the Second Degree and/or Third Degree;

(6) The prosecution knew there was a conflict of interest between Loher and his trial counsel because his trial counsel was under investigation for theft;

(7) The prosecution withheld evidence from the grand jury—there was no DNA evidence and no fingerprints linking Loher and the complaining witness; and

(8) The prosecution breached their contract with Loher by utilizing information from negotiations under HRE Rule 410 and HRPP Rule 11 and by requesting extended, enhanced, and consecutive sentences.

(D) His sentence was illegal because:

(1) The Circuit Court abused its discretion in sentencing Loher to enhanced, extended, and consecutive terms;

(2) Loher entered into a plea negotiation for his prior conviction in 1990, Loher's prior offenses were supposed to be considered as one offense, not three, under federal law;

(3) The Circuit Court did not sentence Loher in accordance with *Apprendi*, *Ring* [Loher apparently was referring to *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)], and *Blakely*;

(4) The Circuit Court abused its power by utilizing Loher's prior conviction despite granting Loher's motion in limine;

(5) Extrinsic and intrinsic facts should be found by a jury;

(6) Whether supervision failed to deter Loher was a fact that should have been found by the jury;

(7) Loher was exposed to a penalty that exceeded the maximum of 20 years after determination that he was a danger to public safety by the court;

(8) The Hawai'i Supreme Court and Intermediate Court of Appeals abused their discretion by dismissing Loher's HRPP Rule 35 Petition; and

(9) The Circuit Court abused its discretion by sentencing Loher as a repeat offender.

The record on appeal included an October 18, 2005 Notice of Motion and Certificate of Service, which stated that Loher enclosed and mailed the Rule 40 Petition, a motion for appointment of counsel, a brief in support of motion for counsel, "In Forma Pauperis," and a witness affidavit. Inmate correspondence from Loher, also filed on October 18, 2005, referenced these documents. However, the record on appeal does not include either a motion for appointment of counsel or a brief in support of motion for counsel filed on or about that date. No order was entered on a motion for appointment of counsel.

As noted above, on March 16, 2006, the Circuit Court denied Loher's Rule 40 Petition without a hearing. The Circuit Court's order stated that Loher's claims were patently frivolous and without a trace of support in the record or from the evidence submitted by Loher. A notice of appeal was timely filed on March 31, 2006. After the notice of appeal was filed, on April 24, 2006, Loher filed "Petitioner's Second Motion for the Appointment of Counsel Ex Parte." No further order was entered.

III. *POINTS OF ERROR*

Loher's six points on appeal identified, by reference, each of the issues raised in the Rule 40 Petition: (1) ineffective assistance of trial and appellate counsel (referencing the twenty-one points listed above); (2) denial of due process and the right to a fair trial (referencing the fifteen points listed above); (3) prosecutorial misconduct (referencing the eight points listed above); and (4) illegal sentencing (referencing, generally, the points listed above). Loher also alleged that the Circuit Court erred when it denied the Rule 40 Petition without a hearing and abused its discretion when it implicitly denied his two motions for the appointment of counsel.

Loher's points on appeal are woefully out of compliance with HRAP Rule 28(b)(4) and his opening brief is disjointed and repetitive. Insofar as we can make out his arguments, we will address the substance of them herein.

IV. *STANDARD OF REVIEW*

Regarding the denial of a HRPP Rule 40 petition without an evidentiary hearing, HRPP Rule 40(f) provides, in relevant part:

(f) *Hearings.* If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner. The court may also deny a hearing on a specific question of fact when a full and fair evidentiary hearing upon that question was held during the course of the proceedings which led to the judgment or custody which is the subject of the petition or at any later proceeding.

In *Barnett v. State*, 91 Hawai'i 20, 979 P.2d 1046 (1999), the Hawai'i Supreme Court stated:

As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim. To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that

the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing. *The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial [court] record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.*

State v. Allen, 7 Haw.App. 89, 92–93, 744 P.2d 789, 792–93 (1987) (emphasis added).

In this regard, the appellate court steps into the trial court's position, reviews the same trial record, and redecides the issue. Because the appellate court's determination of "whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court" is a question of law, the trial court's decision is reviewed *de novo. See United States v. Burrows,* 872 F.2d 915 (9th Cir. 1989) (denial of a post-conviction motion based on ineffective assistance of counsel without conducting an evidentiary hearing is reviewed *de novo* for a determination of whether the files and records of the case conclusively show that petitioner is entitled to no relief). Therefore, we hold that the issue whether the trial court erred in denying a Rule 40 petition without a hearing based on no showing of a colorable claim is reviewed *de novo;* thus, the right/wrong standard of review is applicable.

Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532 (1994).

Barnett, 91 Hawai'i at 26, 979 P.2d at 1052 (brackets and ellipsis omitted; emphasis in original).

## V. *DISCUSSION*

### A. *Ineffective Assistance of Counsel*

 As noted above, Loher raised twenty-one specific allegations of ineffective assis-

tance of both his trial counsel and his appellate counsel, some of which overlap with his arguments concerning due process and illegal sentencing. In a Rule 40 petition, any complaint of ineffective assistance at trial is usually waived pursuant to HRPP Rule 40(a)(3).[5] However, where a petitioner has been represented by the same attorney at trial and on direct appeal, no waiver exists because there has been no realistic opportunity to raise the issue on direct appeal. *Briones v. State,* 74 Haw. 442, 459, 848 P.2d 966, 975 (1993) (citation omitted) (**Briones II**). Generally, the issue of ineffective assistance of appellate counsel is properly before the court on a Rule 40 petition because it could not have been raised until after the conclusion of the direct appeal. *Id.* at 460, 848 P.2d at 975 (citation omitted).

 As noted above, Loher was represented by Kugiya at trial, and Shintani at sentencing and on Loher's direct appeal. Loher raised various points regarding ineffective assistance of trial counsel on his direct appeal. In this proceeding, Loher has failed to demonstrate the existence of extraordinary circumstances necessary to rebut the presumption that he knowingly waived the newly-raised issues concerning Kugiya's alleged ineffective assistance. HRAP Rule 40(a)(3); *Stanley v. State,* 76 Hawai'i 446, 450–51, 879 P.2d 551, 555–56 (1994). Therefore, the Circuit Court did not err in concluding that Loher did not raise a colorable claim that he was denied effective assistance of trial counsel.

This waiver does not, however, extend to any claim that Loher might have to ineffective assistance of counsel of Shintani at sentencing and/or on his direct appeal because, *inter alia,* Loher could not have raised these issues in his previous appeal. In addition, a claim of illegal sentencing is not waived under HRPP Rule 40(a)(3).

---

5. HRPP Rule 40(a)(3) provides:

 Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue. There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

■ Loher's Rule 40 Petition can be construed to make out a claim that appellate counsel was ineffective for failing to appeal the issue of his "forced" testimony. We will briefly recap the issue. The State rested its case sometime after 2:00 p.m. on the first day of trial. Rightly or wrongly, defense counsel was surprised that the State finished so quickly. When, at about 2:30 p.m., defense counsel could not produce another witness and asked to proceed with defense witnesses on the next trial day, the Circuit Court said that it would "allow" the defense to call Loher. Defense counsel objected, stating that Loher had a right not to testify, and depending on the testimony of other defense witnesses, the defense might not need to call him. Defense counsel argued that Loher would be prejudiced if he were forced to testify first because the defense had not fully decided to call him and wanted to evaluate the other testimony before making that strategic decision. The Circuit Court stated that the court was not persuaded by defense counsel's argument and pointed to other incidents of admonishable conduct by defense counsel during trial. The Circuit Court cut off further argument on the subject and ruled: "You may call your client to testify, or if you wish, not to testify or engage in Tachibana at this time, and he may waive his testimony."

Loher claims that his Fifth and Fourteenth Amendment rights under the United States Constitution and article I, section 10 of the Hawaii Constitution were violated and, as we have construed his allegations of error, that appellate counsel ineffectively failed to raise this issue on direct appeal. On this appeal, the State did not specifically address Loher's claim that he was denied his constitutional rights and effective assistance of appellate counsel. As there was no hearing on the Rule 40 Petition, there was no notice to appellate counsel regarding the allegation and no opportunity for appellate counsel to be heard. *See* HRPP Rule 40(f).

We are mindful that, in *Brooks v. Tennessee,* 406 U.S. 605, 606, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) the United States Supreme Court struck down a statute that required a defendant to testify before other defense witnesses. In *Brooks,* the Supreme Court reviewed a state statute requiring that a "defendant desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case." *Id.* The *Brooks* court held that it "is an impermissible restriction on the defendant's right against self-incrimination, to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty...." *Id.* at 609, 92 S.Ct. 1891 (citations and internal quotation marks omitted).

The court in *Brooks* explained:

Although a defendant will usually have some idea of the strength of his evidence, he cannot be absolutely certain that his witnesses will testify as expected or that they will be effective on the stand. They may collapse under skillful and persistent cross-examination, and through no fault of their own they may fail to impress the jury as honest and reliable witnesses. In addition, a defendant is sometimes compelled to call a hostile prosecution witness as his own. Unless the State provides for discovery depositions of prosecution witnesses, which Tennessee apparently does not, the defendant is unlikely to know whether this testimony will prove entirely favorable.

*Id.* at 609–10, 92 S.Ct. 1891 (footnotes omitted). "Because of these uncertainties, a defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause." *Id.* at 610, 92 S.Ct. 1891. "Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed." *Id.* "Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right. By requiring the accused and his lawyer to make that choice without an opportunity to evaluate the actual worth of their evidence, the statute restricts the defense—particularly counsel—in the planning of its case." *Id.* at 612, 92 S.Ct. 1891. "The accused is thereby deprived of the guiding hand of counsel in the timing of this critical element of his defense." *Id.* at 612–13, 92 S.Ct. 1891.

Albeit four months after Loher's direct appeal was decided by this court, in *State v. Kido,* 102 Hawai'i 369, 76 P.3d 612 (App. 2003), we considered a defendant's argument "that requiring Defendant to testify first, before the other defense witness, was a violation of his due process rights and his right against self-incrimination." *Id.* at 374, 76 P.3d at 617 (brackets and internal quotation marks omitted). In *Kido,* we quoted *Brooks* extensively as grounds for vacating Kido's conviction. *Id.* at 374–76, 76 P.3d at 617–19. As Loher's appellate counsel has not been given an opportunity to explain his understanding of the "forced testimony" issue, and the issue has not been fully briefed and argued at a hearing on the Rule 40 Petition, this court is unable to determine why the issue was not raised.[6] Indeed, that is not the standard by which we review an issue of ineffective assistance of appellate counsel.

In *Briones II,* the supreme court held that the standard for evaluating whether appellate counsel was ineffective is as follows:

> If an appealable issue is omitted, then both the issues actually presented on appeal as well as those omitted are evaluated in light of the entire record, the status of the law and, most importantly, counsel's knowledge of both. Counsel's scope of review and knowledge of the law are assessed, in light of all the circumstances, as that information a reasonably competent, informed and diligent attorney in criminal cases in our community should possess. Counsel's *informed* decision as to which issues to present on appeal will not ordinarily be second-guessed. Counsel's performance need not be errorless. If, however, an appealable issue is omitted as a result of the performance of counsel whose competence fell below that required of attorneys in criminal cases then appellant's counsel is constitutionally ineffective.

74 Haw. at 466–67, 848 P.2d at 978 (footnotes omitted; emphasis in original).

■ In *Briones II,* an appealable issue was defined as "an error or omission by counsel, judge, or jury resulting in the withdrawal or substantial impairment of a potentially meritorious defense." *Id.* at 465–66, 848 P.2d at 977–78 (footnote omitted). "An accused's potentially meritorious defenses include the assertion of his constitutional rights." *Id.* at 462, 848 P.2d at 976 (citations and internal quotation marks omitted). In Loher's case, the evidence taken on remand will assist in determining whether there was a substantial impairment of a potentially meritorious assertion of a constitutional right. A hearing on this issue may shed light on whether, for example, the defendant himself created the exigency for taking his testimony first or whether the delay was "trifling" under the circumstances of the case. *See Kido,* 102 Hawai'i at 377, 76 P.3d at 620.[7]

---

6. We do not reach the question of whether, if the issue had been raised by Loher's appellate counsel, the matter would have constituted reversible error. In *Kido,* we identified various situations where *Brooks* error would not be found: (1) where the trial court required that the defendant testify before only some of his witnesses; (2) where the defendant's decision whether to testify congealed before the trial court's action; and/or (3) where the defendant himself created the exigency for taking his testimony first. 102 Hawai'i at 376, 76 P.3d at 619. In *Kido,* the record contained no indication that Kido had already decided to testify, Kido himself did not create the exigency that pushed him to the head of the witness list, the delay was "trifling," and "the choice foisted upon Kido was effectively the same choice the Tennessee statute forced upon Brooks." *Id.* at 376–77, 76 P.3d at 619–20 (citations omitted). The error violated Kido's right against self incrimination under the Fifth Amendment to the United States Constitution and article I, section 10 of the Hawai'i Constitution. *Id.* at 378, 76 P.3d at 621 (citations omitted). After finding error, we held that it was not harmless error because "the trial essentially boiled down to the credibility of witnesses." *Id.* at 379, 76 P.3d at 622.

More recently, in *State v. Sale,* 110 Hawai'i 386, 133 P.3d 815 (App.2006), this court distinguished *Kido* on several grounds. In *Sale,* the defendant "had already stated his decision to testify on the record before the circuit court ruled that he could not wait until [a defense witness's] availability as a witness was resolved." *Id.* at 397, 133 P.3d at 826. The defendant "did not claim in the court below and does not argue on appeal that his decision to testify depended on whether [a defense witness] took the stand." *Id.* The court in *Sale* stated, "But the most important distinction between this case and *Kido* is that Sale turned out to be the only witness for the defense." *Id.*

7. We are mindful that, under Hawaii Rules of Evidence Rule 611(a), a trial court has discretion in its "reasonable control over the mode and

The bottom line is that in the absence of a sufficient record on this appeal, including an opportunity for Loher's former appellate counsel to be heard, we must remand for the development of such a record on the issue of whether Loher had ineffective assistance of appellate counsel. *Briones II*, 74 Haw. at 466–67 n. 17, 848 P.2d at 978 n. 17 (citing *Matsuo v. State*, 70 Haw. 573, 578, 778 P.2d 332, 335 (1989)). The Circuit Court erred in denying the Rule 40 Petition without a hearing on this issue.

### B. *Denial of Due Process and the Right to a Fair Trial*

■ Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, except as set forth in Section V.A. above, we resolve each of Loher's fifteen due process and fair trial points of error as follows. Loher has failed to demonstrate the existence of extraordinary circumstances necessary to rebut the presumption that he knowingly waived the newly raised issues of due process and the right to a fair trial. HRAP Rule 40(a)(3); *Stanley v. State*, 76 Hawai'i 446, 450–51, 879 P.2d 551, 555–56 (1994). Therefore, the Circuit Court did not err in concluding that Loher did not raise a colorable claim for relief.

### C. *Prosecutorial Misconduct*

■ Loher's eight allegations of prosecutorial misconduct are patently frivolous and without a trace of support in the record. No supplemental evidence was offered to support these allegations. Moreover, Loher

has failed to demonstrate the existence of extraordinary circumstances necessary to rebut the presumption that he knowingly waived these newly-raised issues. HRAP Rule 40(a)(3); *Stanley*, 76 Hawai'i at 450–51, 879 P.2d at 555–56. Therefore, the Circuit Court did not err in concluding that Loher did not raise a colorable claim for relief.

### D. *Illegal Sentencing*

Loher argues that his extended sentence was imposed in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny.[8] In *Apprendi*, the United States Supreme Court stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Loher's sentencing counsel, Shintani, failed to raise an objection based on *Apprendi* during sentencing.[9] On Loher's direct appeal, Shintani argued that the Circuit Court abused its discretion in sentencing Loher to an extended term under the facts of the case, but not because it was prohibited by *Apprendi*. Arguably, Loher did not waive his claim to ineffective assistance of sentencing and appellate counsel because he had the same counsel on appeal. *Briones II*, 74 Haw. at 459–60, 848 P.2d at 975 (citations omitted).

■ We must review the timing of Loher's prior proceedings before we consider the merits of Loher's sentencing-related arguments.[10] Loher's Judgment and Sentence was filed on July 18, 2001. Loher's appeal

order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." "This discretion is not unlimited, however, and must be balanced against the rights of the parties...." *Doe v. Doe*, 98 Hawai'i 144, 155 n. 12, 44 P.3d 1085, 1096 n. 12 (2002); Addison M. Bowman, Hawaii Rules of Evidence Manual § 611–1 (3rd ed.2006).

8. Loher was also sentenced to a mandatory minimum of thirteen years and four months, pursuant to HRS § 706–606.5, as a repeat offender. *Apprendi* and its progeny are not applicable to HRS

§ 706–606.5 because only facts other than a finding of prior convictions must be found by a jury. *See Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Only a finding of prior convictions is required to apply HRS § 706–606.5. In addition, *Apprendi* only applies to penalties that increase the maximum statutory incarceration period, not set a mandatory minimum like HRS § 706–606.5. *Id.*

9. Shintani did not file any opposition to the State's motion seeking an extended sentence.

10. The holding in *Apprendi* clearly does not apply retroactively in proceedings which collaterally attack a sentence. *State v. Gomes*, 107 Hawai'i 308, 312, 113 P.3d 184, 188 (2005).

was decided on April 21, 2003 and his conviction and sentence were affirmed. *Apprendi* was decided on June 26, 2000. 530 U.S. at 466, 120 S.Ct. 2348. Thus, Loher's sentence and direct appeal arose after the announcement of the new rule in *Apprendi.*

On May 20, 2003, Loher filed the Rule 35 Motion wherein he alleged that his extended sentence was illegal under *Apprendi.* This court affirmed the denial of Loher's Rule 35 Motion on February 14, 2005. In rejecting Loher's appeal from the Rule 35 Motion, this court cited *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044 (2004), to reject Loher's *Apprendi* argument. In *Rivera,* the Hawai'i Supreme Court held that Hawai'i's extended sentencing statute complied with *Apprendi.* 106 Hawai'i at 156, 102 P.3d at 1054; *see also State v. Kaua,* 102 Hawai'i 1, 13, 72 P.3d 473, 485 (2003) (distinguishing facts intrinsic to the offense charged from extrinsic facts weighed in sentencing), *disagreed with by Kaua v. Frank,* 436 F.3d 1057, 1062 (9th Cir.2006). In *State v. Maugaotega,* 115 Hawai'i 432, 446–47, 168 P.3d 562, 576–77 (2007) (*Maugaotega II* ), however, the Hawai'i Supreme Court held that Hawai'i's extended sentencing statute did not comply with *Apprendi* and its progeny, effectively overruling prior case law which upheld Hawai'i's extended sentence statutory scheme.

Thus, the issue before this court is not whether *Apprendi* can be applied to the denial of post-conviction relief from Loher's sentence in light of the subsequent case law clarifying *Apprendi's* breadth. Rather, the issue appears to be whether the United States Supreme Court's ruling in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), which dictated the outcome in *Maugaotega II,* applies retroactively to Loher's sentence in this second post-conviction proceeding. *See Maugaotega II,* 115 Hawai'i at 433, 168 P.3d at 563.

1. Retroactivity Analysis under *State v. Gomes*

 In *State v. Gomes,* the Hawai'i Supreme Court adopted the United States Circuit Court of Appeal for the Ninth Circuit's (**Ninth Circuit's**) reasoning in *Sanchez–Cervantes,*[11] which applied the United States Supreme Court's retroactivity framework set forth in *Teague v. Lane,*[12] to the ruling in *Apprendi.* 107 Hawai'i at 309, 113 P.3d at 185. Under *Teague,* the determination of whether a constitutional rule of criminal procedure applies to a case on collateral review involves a three-step analysis:

> First, the court must determine when the defendant's conviction became final. Second, it must ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule. That is, the court must decide whether the rule is actually "new." Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity.

*Beard v. Banks,* 542 U.S. 406, 411, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) (citations and internal quotation marks omitted). The defendant in *Gomes* had been sentenced in 1996 and his direct appeal had become final in 1998, years before the *Apprendi* decision.[13] 107 Hawai'i at 310, 314, 113 P.3d at 186, 190. There was no question that *Apprendi* stated a new rule. Thus, the *Gomes* court reviewed the Ninth Circuit's evaluation of the two narrow exceptions to nonretroactivity:

> These exceptions exist if a new rule (1) places certain kinds of primary private individual conduct beyond the power of the criminal law-making authority to proscribe, or (2) requires the observance of those

---

**11.** The Ninth Circuit held in *United States v. Sanchez–Cervantes,* 282 F.3d 664, 671 (9th Cir. 2002), that the new rule of criminal procedure announced in *Apprendi* does not apply retroactively on collateral review of previously imposed sentences.

**12.** *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

**13.** The United States Supreme Court considers a conviction to be final for the purpose of a retroactivity analysis when a defendant's direct appeal in the state courts has been exhausted and the time for filing a petition for a writ of certiorari to the Supreme Court has elapsed or a timely filed petition to the Supreme Court has been finally denied. *Beard v. Banks,* 542 U.S. at 411, 124 S.Ct. 2504 (citations omitted).

procedures that are implicit in the concept of liberty....

[B]ecause *Apprendi* neither decriminalized drug possession or drug conspiracies nor placed such conduct beyond the scope of the state's authority to proscribe, the first *Teague* exception does not apply here.... *Apprendi* is not a watershed rule of criminal procedure enabling it to be applied retroactively under *Teague's* second exception. Inasmuch as the application of *Apprendi* only affects the enhancement of a defendant's sentence once he or she has already been convicted beyond a reasonable doubt, it does not fit within *Teague's* limited exceptions to the bar against retroactive application of new constitutional rules of criminal procedure.

*Gomes,* 107 Hawai'i at 313, 113 P.3d at 189 (citations, internal quotation marks, brackets, and ellipses omitted; format adjusted). Based on this retroactivity analysis, the supreme court held that "the *Apprendi* rule, however it may be construed, is not controlling retroactively on collateral attack." *Id.* at 314, 113 P.3d at 190.

### 2. Hawaii Case Law Post-*Apprendi*

Starting with *State v. Kaua,* 102 Hawai'i 1, 72 P.3d 473 (2003),[14] until *Maugaotega II,* the Hawai'i Supreme Court steadfastly opined that Hawaii's extended sentencing scheme comported with *Apprendi.*[15] *See, e.g., State v. Hauge,* 103 Hawai'i 38, 79 P.3d 131 (2003); *State v. Rivera,* 106 Hawai'i 146, 102 P.3d 1044 (2004); *State v. Maugaotega,* 107 Hawai'i 399, 114 P.3d 905 (2005) (***Maugaotega I***); *State v. White,* 110 Hawai'i 79, 129 P.3d

1107 (2006); *State v. Kekuewa,* 114 Hawai'i 411, 163 P.3d 1148 (2007). *Maugaotega II* succinctly explicates the reasoning for the Hawai'i Supreme Court's retention of this analysis throughout the United States Supreme Court's refinement of its Sixth Amendment jurisprudence in, *inter alia, Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Maugaotega II,* 115 Hawai'i at 437–42, 168 P.3d at 567–72. In *Maugaotega II,* the Hawai'i Supreme Court acknowledged that the United States Supreme Court, in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), left no doubt that a majority of the United States Supreme Court had rejected the intrinsic/extrinsic distinction underlying the Hawai'i decisions that had upheld Hawaii's extended sentencing system under *Apprendi* and its progeny. *Maugaotega II,* 115 Hawai'i at 442–47, 168 P.3d at 572–77.

In a supplemental submission to this court, Loher argues that *Maugaotega II,* and by implication *Cunningham,* should be applied retroactively on this collateral review of his extended sentence. Thus, in effect, Loher asks this court to consider, *inter alia,* whether *Cunningham* is a new rule of constitutional criminal procedure under *Teague v. Lane.*

■ We first note that the Ninth Circuit recently rejected the argument that the *Cunningham* decision announced a new rule of criminal procedure for determining whether a state sentencing statute violates the Sixth Amendment.[16] *Butler v. Curry,* 528 F.3d

---

14. This court's decision in *State v. Carvalho,* 101 Hawai'i 97, 63 P.3d 405 (App.2002), which preceded the supreme court's decision in *State v. Kaua,* 102 Hawai'i 1, 72 P.3d 473, drew the same conclusion.

15. Beginning with their dissents in *State v. Rivera,* 106 Hawai'i at 166, 102 P.3d at 1064, Justice Acoba, joined by Justice Duffy, were equally steadfast in their disagreement with the majority and called for a reexamination of the holding in *State v. Kaua* in light of the United States Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531; 159 L.Ed.2d 403 (2004).

16. Hawai'i courts are not obligated to follow the decisions of the Ninth Circuit even on questions

of federal constitutional law. *State v. Simeona,* 10 Haw.App. 220, 237, 864 P.2d 1109, 1117 (1993), overruled on other grounds by *State v. Ford,* 84 Hawai'i 65, 70, 929 P.2d 78, 83 (1996); *see also Clark v. Murphy,* 331 F.3d 1062, 1069 (9th Cir.2003) ("While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." (citations omitted)); *Strong v. Omaha Constr. Indus. Pension Plan,* 270 Neb. 1, 10, 701 N.W.2d 320, 328 (2005)(same); *People v. Bradley,* 1 Cal.3d 80, 81, 81 Cal.Rptr. 457, 460 P.2d 129, 132 (1969) (same).

624, 636 (9th Cir.2008). On that basis, the Ninth Circuit opined that *Cunningham's* holding that California's determinate sentencing law (**DSL**) violated the Sixth Amendment could be applied retroactively to the time of the Supreme Court's prior case law which, in the opinion of the Ninth Circuit, firmly established that a sentencing scheme in which a maximum possible sentence was set based on facts found by a judge was not consistent with the Sixth Amendment. *Butler*, 528 F.3d at 634–35.[17] Applying the *Teague* rule of nonretroactivity, the Ninth Circuit stated:

> Looking at the legal developments prior to *Cunningham*, we conclude that the Supreme Court's Sixth Amendment case law at the time Butler's conviction became final [on November 7, 2005] compelled the conclusion that California's DSL was unconstitutional. First in the line of pertinent cases was *Apprendi*, which held that any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. Next, *Blakely* clarified that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant and reaffirmed *Apprendi's* bright-line rule. Finally, *Booker* held that the Federal Sentencing Guidelines were invalid because, as in *Blakely*, the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact. Taken together, *Apprendi*, *Blakely*, and *Booker*, firmly established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment.

> . . . .

> In short, *Cunningham* did not add any new elements or criteria for determining when a state statute violates the Sixth Amendment. It simply applied the rule of *Blakely* to a distinct but closely analogous state sentencing scheme. That the Supreme Court held for the first time that California's sentencing scheme violates the Sixth Amendment does not render its decision in *Cunningham* a new rule.

*Butler*, 528 F.3d at 634–36 (citations, internal quotation marks and footnotes omitted). The Ninth Circuit has, however, previously held that *Blakely* and *Booker* announced "new rules." *See Schardt v. Payne*, 414 F.3d 1025, 1035–36 (9th Cir.2005) (*Blakely* ); *United States v. Cruz*, 423 F.3d 1119, 1120 (9th Cir.2005) (per curiam) (*Booker* ).

### 3. Application to Loher

In Loher's case, we do not need to reach the issue of whether we agree or disagree with the Ninth Circuit's conclusion that *Cunningham* does not constitute a new rule[18] because Loher's conviction became fi-

---

17. In rendering this decision, the Ninth Circuit effectively overruled the decisions in literally dozens of United States District Court cases and appears to have disagreed with nearly every other court that has considered the issue to date. *See, e.g., Reinhold v. Rozum*, No. 07–5154, 2008 WL 2474570, at *2–3 (E.D. Pa. June 18, 2008); *Gorton v. Tilton*, No. EDCV 07–1017 ODW (AJW) 2008 WL 2397581, at *3–4 (C.D. Cal. June 12, 2008); *Com. v. Wojtaszek*, 951 A.2d 1169, 1172–73 (Pa.Super.Ct. 2008); *In re Saade*, 162 Cal. App.4th 1391, 1406, 77 Cal.Rptr.3d 39, 51–52 (Cal.Ct.App.2008); *Thacker v. Tennessee*, No. 308–CV–118, 2008 WL 1929982, at *1 (E.D. Tenn. April 30, 2008); *Fennen v. Nakayema*, 494 F.Supp.2d 1148, 1155–56 (E.D.Cal.2007); *Lizardo v. United States*, No. 07–10969–PBS, 2007 WL 4554201, at *3 (D.Mass. December 18, 2007); *Jordan v. Evans*, No. 07CV466–J (NLS), 2007 WL 2703118, at *10–11 (S.D.Cal. September 14, 2007); *Marquez v. Evans*, No. C 06–0913 CRB (PR), 2007 WL 2406867, at *8–9 (N.D.Cal. August 20, 2007); *Salerno v. Schriro*, No. CV 05–976–PHX–ROS, 2007 WL 2153584, at *14 (D.Ariz. July 24, 2007); *Morales v. United States*, No. 07 CV 577 LAP, 02 CR 1409 LAP, 2007 WL 1412338, at *6–7 (S.D.N.Y. May 11, 2007); *Dropalski v. Stewart*, No. C06–5697 FDB/KCS, 2007 WL 963989, at *1 (W.D.Wash. March 28, 2007); *State v. Frawley*, 143 N.M. 7, 172 P.3d 144, 154 (2007).

18. Indeed, based on the Hawai'i Supreme Court's discussion of the *Cunningham* decision in *Maugaotega II*, it seems likely that a majority of the supreme court would reject the Ninth Circuit's conclusion that *Cunningham* did not change the legal landscape. *See also State v. Jess*, 117 Hawai'i 381, 394, 184 P.3d 133, 146

nal on or about July 20, 2003.[19] Even under the Ninth Circuit's analysis rejecting *Cunningham* as a new rule, the legal landscape only became clear after *Apprendi* (2000), *Blakely* (2004), and *Booker* (2005), taken together, established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment. *Curry*, 528 F.3d at 634–39. Loher's sentence and direct appeal became final long before the Supreme Court's decisions in *Blakely* and *Booker*. Therefore, in this case, we need to look no further than the Supreme Court's 2004 and 2005 decisions in *Blakely* and *Booker*.

Virtually every United States Circuit Court to address these issues has held that *Blakely* and *Booker* announced new rules of constitutional criminal procedure and, under the *Teague* test, do not apply retroactively on collateral review. *See, e.g., Gonzales v. Tafoya*, 515 F.3d 1097, 1110–14 (10th Cir.2008); *United States v. Hernandez*, 436 F.3d 851, 855 (8th Cir.2006); *In re Zambrano*, 433 F.3d 886, 888 (D.C.Cir.2006); *United States v. Morris*, 429 F.3d 65, 70 (4th Cir.2005); *Schardt*, 414 F.3d at 1036 (9th Cir.2005) (*Booker*); *In re Elwood*, 408 F.3d 211, 212 (5th Cir.2005); *Lloyd v. United States*, 407 F.3d 608, 612–16 (3rd Cir.2005); *Cirilo-Muñoz v. United States*, 404 F.3d 527, 531–33 (1st Cir.2005) (*Booker*); *Guzman v. United States*, 404 F.3d 139, 142–44 (2nd Cir.2005) (*Booker*); *Humphress v. United States*, 398 F.3d 855, 860–61 (6th Cir.2005); *Varela v. United States*, 400 F.3d 864, 866 (11th Cir. 2005); *McReynolds v. United States*, 397 F.3d 479, 480–81 (7th Cir.2005); *Carmona v. United States*, 390 F.3d 200, 202 (2nd Cir. 2004) (*Blakely*); *Cuevas v. Derosa*, 386 F.3d 367, 368 (1st Cir.2004); *Cook v. United States*, 386 F.3d 949, 950 (9th Cir.2004) (*Blakely*). We agree with these decisions and therefore hold that, under any construction of the post-*Apprendi* cases, Loher is not

entitled to retroactive application of *Blakely* and *Booker* on collateral review.

■ Finally, we return to the issue of whether Loher raised a colorable claim regarding his extended sentence and/or ineffective assistance of sentencing and appellate counsel for failure to raise objections pursuant to *Apprendi* and its progeny. Even if Loher had raised *Apprendi* issues, under then-existing Hawai'i law, his arguments would have been rejected. There is no colorable claim that an error or omission by counsel resulted in the substantial impairment of a potentially meritorious defense under *Briones II*, 74 Haw. at 465–66, 848 P.2d at 977–78. Even if he had a potentially meritorious argument under the line of post-*Apprendi* cases that led to the supreme court's decision in *Maugaotega II*, on this collateral review, he is not entitled to retroactive application of the new rules announced after his direct appeal became final. Loher's other sentencing-related claims are completely without merit.

### E. Denial of Hearing on and Appointment of Counsel for the Rule 40 Petition

With respect to the ineffective assistance of appellate counsel issue identified above, we conclude that the Circuit Court erred in denying the Rule 40 Petition without a hearing.

The record does not indicate whether Loher's initial motion for appointment of counsel was received and reviewed by the Circuit Court or whether it was granted or denied. The "second" motion, also not ruled upon, was received after an appeal was taken and therefore was untimely. Upon remand, Loher should be appointed counsel, pursuant to HRPP Rule 40(i), if he is unable to afford counsel, because he has stated a colorable claim for relief in the Rule 40 Petition.

(2008) (stating that "[e]verything changed" after *Cunningham*).

**19.** The judgment of conviction and sentence in Loher's case was affirmed on his direct appeal to the supreme court on April 21, 2003. A petition for a writ of certiorari seeking review of a judg-

ment entered by a state court of last resort must be filed in the United State Supreme Court within 90 days after entry of the judgment on appeal. Sup.Ct. R. 13. It appears that Loher did not file a petition for writ of certiorari. Thus, his conviction became final on or about July 20, 2003. *See* n. 13 above.

## VI. *CONCLUSION*

The Circuit Court's Order Denying Petition for Post–Conviction Relief, filed on March 16, 2006, is affirmed in part and vacated in part. This case is remanded for a HRPP Rule 40 hearing consistent with this Opinion.