**Electronically Filed
Supreme Court
SCWC-15-0000363
21-MAR-2018
08:10 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

ROBERT FLUBACHER,
Petitioner/Petitioner-Appellant,

vs.

STATE OF HAWAI'I,
Respondent/Respondent-Appellee.

SCWC-15-0000363

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000363; S.P.P. NO. 14-1-00004)

MARCH 21, 2018

RECKTENWALD, C.J., McKENNA, POLLACK, AND WILSON, JJ.,
WITH NAKAYAMA, J., DISSENTING SEPARATELY

OPINION OF THE COURT BY RECKTENWALD, C.J.

Robert Flubacher pled guilty to various offenses in

multiple cases, and was sentenced to extended term sentences,

which became final in 2003. In 2014, Flubacher filed a petition

for post-conviction relief pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40, arguing that his sentence was illegal because a judge, not a jury, found a relevant fact used to enhance his sentence in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Circuit Court of the First Circuit (circuit court)[1] denied the petition, and the Intermediate Court of Appeals (ICA) affirmed.  On certiorari, Flubacher argues that his extended term sentences were imposed in an illegal manner, and requests that this court vacate and remand for resentencing.

This appeal requires us to revisit our prior decisions which addressed whether Hawaii's extended term sentencing scheme was invalid under Apprendi and subsequent Supreme Court cases including Blakely v. Washington, 542 U.S. 296 (2004), United States v. Booker, 543 U.S. 220 (2005), and Cunningham v. California, 549 U.S. 270 (2007).  This court initially held that certain features of Hawaii's scheme (specifically, that the facts determined by the judge were "extrinsic" to the charged offense) meant that Hawaii's statute was not invalidated by the rule announced in Apprendi.  State v. Kaua, 102 Hawai'i 1, 72 P.3d 473 (2003).

Our initial application of Apprendi in Kaua was rejected by both the United States District Court for the

---

[1]    The Honorable Richard K. Perkins presided.

2

District of Hawai'i and the Court of Appeals for the Ninth Circuit.  See Kaua v. Frank, 436 F.3d 1057, 1062 (9th Cir. 2006); Kaua v. Frank, 350 F. Supp. 2d 848, 849-50, 855-56 (D. Haw. 2004).  Then, commencing after the decision in Blakely, our own decisions reflected disagreement as to whether our sentencing scheme was unconstitutional.  See, e.g., State v. Rivera, 106 Hawai'i 146, 102 P.3d 1044 (2004); State v. Gomes, 107 Hawai'i 308, 113 P.3d 184 (2005); State v. Maugaotega, 107 Hawai'i 399, 114 P.3d 905 (2005) (Maugaotega I).  Nevertheless, it was not until after the decision in Cunningham that a majority of the court determined that our scheme was invalid.  State v. Maugaotega, 115 Hawai'i 432, 168 P.3d 562 (2007) (Maugaotega II).

It is against this backdrop that we consider Flubacher's appeal, and conclude that our sentencing scheme was invalid based on the holding in Apprendi.  As set forth below, Apprendi plainly stated that a sentencing scheme was invalid when it allowed a judge, rather than a jury, to determine facts that resulted in extended sentences.  In concluding that Apprendi invalidated our sentencing scheme, we note that the State has now conceded that the scheme was unlawful based on Apprendi, and that accordingly, Flubacher is entitled to relief.  While that concession is not binding on us, we conclude, for the reasons set forth below, that it is well founded.

3

Thus, we conclude that Flubacher's extended term sentences were imposed in an illegal manner. Accordingly, we vacate the ICA's Judgment on Appeal, and remand this case to circuit court for further proceedings consistent with this opinion.

## I.  Background

Flubacher was charged with: Unauthorized Control of Propelled Vehicle (Count I), Driving Without License (Count II), and Theft in the Fourth Degree (Count III) in Cr. No. 01-1-2788; Robbery in the First Degree (Count I), Assault in the First Degree (Count II), Assault in the First Degree (Count III), Assault in the Second Degree (Count IV), and Unauthorized Control of Propelled Vehicle (Count V) in Cr. No. 01-1-2789; and Robbery in the First Degree in Cr. Nos. 02-1-0089, 02-1-0090, and 02-1-0125. Flubacher pled guilty to all counts in each case.

The State filed a motion for extended term of imprisonment pursuant to Hawai'i Revised Statutes (HRS) §§ 706-661[2] and 706-662(4)(a),[3] as follows:  (1) in Cr. No. 01-1-2788,

_____

[2]      HRS § 706-661 (Sentence of imprisonment for felony; extended terms) (Supp. 1999) provided, in pertinent part:

> In the cases designated in section 706-662, a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

(continued...)

4

from a five year term of imprisonment to ten years for Count I;

(2) in Cr. No. 01-1-2789, from a twenty year term of imprisonment

to life with the possibility of parole for Count I, from ten year

terms of imprisonment to twenty years for Counts II and III, and

from five year terms of imprisonment to ten years for Counts IV

and V; and (3) in Cr. Nos. 02-1-0089, 02-1-0090, and 02-1-0125,

from twenty year terms of imprisonment to life with the

possibility of parole.

The circuit court[4] granted the State's motion, and

_____

[2](...continued)
        (1) For murder in the second degree--life without the
        possibility of parole;

        (2) For a class A felony--indeterminate life term of
        imprisonment;

        (3) For a class B felony--indeterminate twenty-year
        term of imprisonment; and

        (4) For a class C felony--indeterminate ten-year term
        of imprisonment.

    [3]    HRS § 706-662(4)(a) (Criteria for extended terms of imprisonment)
(Supp. 2001) provided:

        A convicted defendant may be subject to an extended
        term of imprisonment under section 706-661 if the
        convicted defendant satisfies one or more of the
        following criteria:

            (4) The defendant is a multiple offender whose
            criminal actions were so extensive that a
            sentence of imprisonment for an extended term is
            necessary for protection of the public.  The
            court shall not make this finding unless:
                (a) The defendant is being sentenced for
                two or more felonies or is already under
                sentence of imprisonment for felony[.]

    [4]    The Honorable Michael A. Town presided.

sentenced Flubacher to pay restitution, and to serve the following terms of imprisonment concurrently, with credit for time served:  (1) in Cr. No. 01-1-2788, as to Count I, ten years' incarceration with a mandatory minimum of one year and eight months; as to Counts II and III, thirty days' incarceration; (2) in Cr. No. 01-1-2789, as to Count I, life incarceration with the possibility of parole, with a mandatory minimum of six years and eight months; as to Counts IV and V, ten years' incarceration with a mandatory minimum of one year and eight months; as to Counts II and III, twenty years' incarceration with a mandatory minimum of three years and four months; (3) in Cr. Nos. 02-1-0089, 02-1-0090, and 02-1-0125, life incarceration with the possibility of parole with a mandatory minimum of six years and eight months.

Flubacher did not appeal any of his convictions or sentences, and they became final on October 13, 2003.

In 2005, Flubacher filed an HRPP Rule 40[5] petition for

---

[5]     HRPP Rule 40(a) (Proceedings and Grounds) (2003) provides in relevant part:

> The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction, as follows:

(continued...)

post-conviction relief, alleging ineffective assistance of counsel, and arguing that his sentence was illegal because the court cited criteria not in the extended term statute, which the circuit court denied.

In 2014, Flubacher filed another petition for post-conviction relief (Petition), alleging that his sentence was illegal under Apprendi because the judge, not a jury, found that his extended term sentences were necessary for the protection of the public. The State countered that Flubacher's arguments were waived because he did not raise them on direct appeal, and that Apprendi and Cunningham may not be retroactively applied.

Flubacher amended his Petition, alleging three additional grounds for relief, including that the sentencing judge: (1) considered "false facts," i.e., that Flubacher had hit one of his victims in the face with a hammer; (2) demonstrated bias against Flubacher because of Flubacher's prior

---

[5](...continued)

> (1) From Judgment. At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds:
>       (i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawai'i;
>       (ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter;
>       (iii) that the sentence is illegal;
>       (iv) that there is newly discovered evidence; or
>       (v) any ground which is a basis for collateral attack on the judgment.

7

history with the court; and (3) took judicial notice of his

presentence report and other documents in determining his

sentence.

The circuit court denied Flubacher's Petition, stating

in pertinent part in its Conclusions of Law:

> 1.  HRPP Rule 40(a)(3) provides as follows:
>
>     Inapplicability. Rule 40
>     proceedings shall not be available
>     and relief thereunder shall not be
>     granted where the issues sought to
>     be raised have been previously ruled
>     upon or were waived. Except for a
>     claim of illegal sentence, an issue
>     is waived if the petitioner
>     knowingly and understandingly failed
>     to raise it and it could have been
>     raised before the trial, at the
>     trial, on appeal, in a habeas corpus
>     proceeding or any other proceeding
>     actually conducted, or in a prior
>     proceeding actually initiated under
>     this rule, and the petitioner is
>     unable to prove the existence of
>     extraordinary circumstances to
>     justify the petitioner's failure to
>     raise the issue. There is a
>     rebuttable presumption that a
>     failure to appeal a ruling or to
>     raise an issue is a knowing and
>     understanding failure.
>
> 2.  Flubacher's claim that his sentence was in
>     violation of <u>Apprendi v. New Jersey</u>, 530
>     U.S. 466 . . . (2000), is a claim of
>     illegal sentence which, although arguably
>     raised in his prior Rule 40 petition, was
>     not ruled upon.
>
> 3.  With respect to the illegal sentence
>     claim, the [ICA] has determined that a
>     defendant sentenced to an extended term
>     that became final after <u>Apprendi</u> but prior
>     to the United States Supreme Court rulings
>     in <u>Blakely v. Washington</u>, 542 U.S. 296 . .
>     . (2004), and <u>United States v. Booker</u>, 543
>     U.S. 220 . . . (2005), is not entitled to
>     relief on collateral attack. <u>Loher v.</u>

8

State, 1[1]8 Haw[ai'i] 522, 538
(Haw.[]App. 2008), cert. dismissed (August
5, 2009).

4.   Flubacher's sentence became final on
     October 13, 2003 -- that is, after
     Apprendi and prior to both Blakely and
     Booker.  Therefore, pursuant to Loher,
     Flubacher's sentence was not illegal under
     Apprendi and he is not entitled to
     retroactive application of the
     post-Apprendi line of cases.[6]

5.   Flubacher's remaining claims were waived
     as he could have but did not raise them on
     direct appeal or in S.P.P. No. 05-1-0081
     and has failed to demonstrate the
     existence of extraordinary circumstances
     to justify his failure to raise them as
     required by HRPP Rule 40(a)(3).

6.   Assuming arguendo that the claims relating
     to the factors considered by the
     sentencing court in determining
     Flubacher's sentence were not waived, they
     are wholly without merit, patently
     frivolous, and without a trace of support
     in the record.

Flubacher appealed to the ICA, reiterating the claims

in his Petition.  Flubacher additionally argued that Loher was

not the controlling authority in his case because he was not

requesting retroactive application of Blakely or Booker, and that

_____

[6]   With respect to this Conclusion of Law, the circuit court stated
in a footnote:

     Loher is the controlling precedent for Hawai'i trial
     courts determining issues like the instant one.  While
     it appears that the Ninth Circuit's decision in Kaua
     v. Frank, 436 F.3d 1057, 1061-62 (9th Cir. 2006),
     cert. denied, Frank v. Kaua, 549 U.S. 1245 . . .
     (2007), regarding a defendant whose sentence was final
     on or about June 1, 2001, holds that the sentencing
     court's public protection finding was a violation of
     Apprendi, the rulings of the federal district and
     circuit courts are not controlling authority, but
     merely persuasive authority, even on a federal
     constitutional question.

9

he was only requesting application of <u>Apprendi</u>, <u>Cunningham</u>, and <u>Ring v. Arizona</u>, 536 U.S. 584 (2002).

The State responded that Flubacher's sentences were not illegal under <u>Apprendi</u> and the post-<u>Apprendi</u> line of cases because the "legal landscape" only became clear after <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, "taken together," established that a "sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment." The State additionally contended that Flubacher's remaining claims were waived, and that he had failed to demonstrate the existence of extraordinary circumstances to justify his failure to raise them.

In a summary disposition order, the ICA determined that Flubacher's case was similar to <u>Loher</u>, where the defendant's conviction was also finalized in 2003, and thus, <u>Blakely</u> and <u>Booker</u> did not apply retroactively on collateral review, and it did not need to decide whether <u>Cunningham</u> applied. With respect to Flubacher's contention that the circuit court erroneously considered that he hit one of his victims with a hammer, the ICA determined that the argument was waived, and that even if the argument was not waived, there was evidence in the record that supported the circuit court's conclusion.

Accordingly, the ICA affirmed the circuit court's

10

Findings of Fact, Conclusions of Law, and Order Denying

Flubacher's Petition.  The ICA filed its Judgment on Appeal on

October 13, 2016.

## II.  Standard of Review

With respect to the denial of a HRPP Rule 40 petition

without an evidentiary hearing, HRPP Rule 40(f) provides, in

relevant part:

> **(f) Hearings.** If a petition alleges facts that if
> proven would entitle the petitioner to relief, the
> court shall grant a hearing which may extend only to
> the issues raised in the petition or answer.  However,
> the court may deny a hearing if the petitioner's claim
> is patently frivolous and is without trace of support
> either in the record or from other evidence submitted
> by the petitioner.  The court may also deny a hearing
> on a specific question of fact when a full and fair
> evidentiary hearing upon that question was held during
> the course of the proceedings which led to the
> judgment or custody which is the subject of the
> petition or at any later proceeding.

As a general rule, a trial court should hold an

evidentiary hearing on a HRPP Rule 40 petition for

post-conviction relief if the petition states a colorable claim

for relief.  Dan v. State, 76 Hawai'i 423, 427, 879 P.2d 528, 532

(1994).  To establish a colorable claim, a petitioner must allege

facts that, if taken as true, would change the verdict.  Id.

> This court has stated that:

> Where examination of the record of the trial court
> proceedings indicates that the petitioner's
> allegations show no colorable claim, it is not error
> to deny the petition without a hearing.  The question
> on appeal of a denial of a Rule 40 petition without a
> hearing is whether the trial record indicates that
> Petitioner's application for relief made such a

11

> showing of a colorable claim as to require a hearing
> before the lower court.

Barnett v. State, 91 Hawai'i 20, 26, 979 P.2d 1046, 1052 (1999)

(emphasis omitted, quoting State v. Allen, 7 Haw. App. 89, 92-93,

744 P.2d 789, 792-93 (1987)).

"[T]he appellate court's determination of 'whether the

trial record indicates that Petitioner's application for relief

made such a showing of a colorable claim as to require a hearing

before the lower court' is a question of law, [and thus] the

trial court's decision is reviewed de novo."  Id. (brackets and

ellipsis omitted; emphasis in original) (citing Dan, 76 Hawai'i

at 427, 879 P.2d at 532).

### III.  Discussion

In his application for writ of certiorari, Flubacher

presents the following issues:

> A.   Appellant[']s extended sentences are illegal
>      because they violate the United States Supreme
>      Court cases "Apprendi v. New Jersey" and "Ring
>      v. Arizona" and the Hawai'i ICA's "Loher v.
>      State" case decision is not controlling in
>      Appellant['s] case and does not foreclose
>      Appellant[']s claim[.]
>
> B.   Appellant[']s claim that the sentencing judge
>      erroneously found that Appellant 'Bashed' a
>      woman with a hammer and then relied on that
>      erroneous finding in extending Appellant[']s
>      sentences was not waived under Haw. R. Penal P.
>      40(2)(3)-1[.]

In supplemental briefing requested by this court, the

State changed its prior position regarding the first issue, and

conceded that Flubacher's sentence was illegal.  Specifically,

12

the State now concedes that "any extended term sentence imposed after June 26, 2000, in which the court, not a jury, found the fact of 'necessary for protection of the public' is in violation of Apprendi."

As set forth below, the State's concession is well-founded, and accordingly, we remand for resentencing.[7]  See State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000).

At issue in Apprendi was a New Jersey "hate crime" statute, which provided for the imposition of an enhanced sentence based upon a finding, by the sentencing judge by a preponderance of the evidence, that the defendant had committed an offense "with a racially biased purpose."  530 U.S. at 468-70. Apprendi fired several shots into the home of an African-American family who had recently moved into a previously all-white neighborhood.  Id. at 469.  Apprendi subsequently entered into a plea agreement, under which he pleaded guilty to two counts of the second-degree offense of possessing a firearm with an unlawful purpose and one count of the third-degree offense of unlawfully possessing an antipersonnel bomb, but reserved the

---

[7]  The dissent contends that Flubacher's second issue is waived.  See Dissent at 15-17.  Because we conclude that Flubacher's sentence is illegal and remand for resentencing, we do not address Flubacher's remaining issue raised on appeal and whether that remaining issue was waived.  Further, any analysis of waiver must be made in light of HRPP Rule 40(a)(3), which specifically exempts illegal sentence claims from being waived.  See also HRPP Rule 35 ("The court may correct an illegal sentence at any time . . .").

right to challenge any hate crime sentencing enhancement as violating the Constitution.  Id. at 469-70.  After the plea was accepted by the court, the prosecutor filed a motion for an extended term sentence.  Id. at 470.  The court conducted an evidentiary hearing on Apprendi's purpose for the shooting, and held that the hate crime enhancement applied, finding by a preponderance of the evidence that "the crime was motivated by racial bias," and Apprendi's actions were taken "with a purpose to intimidate" as provided by the hate crime statute.  Id. at 470-71.  Apprendi appealed, and a divided New Jersey Supreme Court ultimately upheld his sentence, rejecting his challenge to the constitutionality of the enhanced sentencing procedure.  Id. at 471-72.

The United States Supreme Court granted certiorari, and reversed.  Id. at 474.  The Court stated that the constitutional protections at stake were of "surpassing importance," including:

> the proscription of any deprivation of liberty without "due process of law," Amdt. 14, and the guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury," Amdt. 6.  Taken together, these rights indisputably entitle a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."

Id. at 476–77 (emphasis added).

The Court discussed its past jurisprudence, noting that in McMillan v. Pennsylvania, 477 U.S. 79 (1986), it first coined

14

the term "sentencing factor" to "refer to a fact that was not found by a jury but that could affect the sentence imposed by the judge." Id. at 485. The Court in McMillan held that a Pennsylvania sentencing scheme was valid because it operated "solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without [a] special finding," while also noting that "a state scheme that keeps from the jury facts that expose defendants to greater or additional punishment, may raise serious constitutional concern." Id. at 486 (internal quotations, citations, and brackets omitted).

The Apprendi Court stated that the relevant inquiry should not be one of form, but instead of effect: "does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id. at 494. Thus, the Court rejected the "constitutionally novel and elusive distinction between 'elements' and 'sentencing factors'"[8] Id.

---

[8]    The Court noted that it did not suggest that the term "sentencing factor" was devoid of meaning, stating:

> The term appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence within the range authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered

(continued...)

15

(citation omitted). The Court reasoned that the effect of New Jersey's sentencing enhancement "unquestionably . . . turn[ed] a second-degree offense into a first degree offense," and that the potential doubling of Apprendi's sentence from ten years to twenty years was "unquestionably of constitutional significance" both in terms of years of absolute imprisonment and because of the "more severe stigma attached." Id. at 494-95. Therefore, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In so holding, the Court also endorsed the following rule: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." Id. (citations omitted).

Following Apprendi, this court repeatedly considered whether Hawaii's extended term sentencing scheme comported with Apprendi. Until 2007, we concluded that it did so, on the ground

---

[8](...continued)
> by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.

Apprendi, 530 U.S. at 494 n.19 (emphasis in original, citation omitted).

that Hawaii's scheme only required the judge to determine "extrinsic" facts, rather than facts that were "intrinsic" to the offense. See Kaua, 102 Hawai'i 1, 72 P.3d 473; Rivera, 106 Hawai'i 146, 102 P.3d 1044; Maugaotega I, 107 Hawai'i 399, 114 P.3d 905; State v. White, 110 Hawai'i 79, 129 P.3d 1107 (2006). It was not until Maugaotega II, that this court acknowledged that the United States Supreme Court, in Cunningham, rejected the validity of our intrinsic/extrinsic distinction, which formed the basis of these decisions. 115 Hawai'i at 442-47, 168 P.3d 572-77.

In State v. Kaua, the defendant was indicted in connection with a 1999 hostage standoff, and while the jury acquitted him of attempted murder in the first degree, it found him guilty of several other offenses. 102 Hawai'i at 2-3, 72 P.3d at 474-75. The State moved for an extended term sentence pursuant to HRS § 706-662(4)(a). Id. at 3-4, 72 P.3d at 475-76. At the evidentiary hearing, the circuit court followed the two-step process required at that time, determining first that Kaua was a multiple offender subject to an extended term sentence, i.e., Kaua was being sentenced for two or more felonies at that time, and had already been under sentence of imprisonment for a felony; and second, that the extended term sentence was necessary for the protection of the public. Id. at 4-7, 72 P.3d at 476-79.

17

In determining that the extended term sentence was necessary for the protection of the public, the circuit court cited Kaua's history of substance abuse, his substance abuse shortly before the hostage incident, his history of assaultive behavior, his inability to control his behavior while under the influence or under stress, his access to firearms and lack of experience with the firearm used to perpetrate the standoff, and the strong possibility that he could have injured minors and innocent bystanders during the incident because of his inexperience. Id. at 4-6, 72 P.3d at 476-478. Accordingly, the circuit court granted the State's motion, and sentenced Kaua to several extended term sentences. Id.

Kaua appealed, and this court affirmed Kaua's judgment of conviction and sentence.[9] Id. Kaua subsequently filed a motion for correction of illegal sentence under HRPP Rule 35,[10]

_____

[9] Kaua appealed to this court on February 28, 2000, Apprendi was decided on June 26, 2000, and this court issued its summary disposition order on May 1, 2001. State v. Kaua, 102 Hawai'i at 6, 72 P.3d at 478. Although Apprendi had been decided prior to this court's State v. Kaua decision, Kaua did not raise any Apprendi issues in his direct appeal. Kaua v. Frank, 436 F.3d at 1059.

[10] HRPP Rule 35(a) (Correction or Reduction of Sentence) (2003) provides:

> The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence. A motion made by a defendant

(continued...)

arguing that the two-step process for determining a defendant's status as a multiple offender should be determined by the jury in a separate sentencing hearing, according to Apprendi. Id. at 6, 72 P.3d at 478. The circuit court denied Kaua's motion, finding that his extended term sentence was proper, and that the "facts of conviction which exposed Kaua to an extended term of imprisonment were not in the nature of 'elements' of the offenses charged or of a separate legal offense." Id. at 6-7, 72 P.3d at 478-79.

This court upheld the process followed by the sentencing court, reasoning:

> Specifically, the facts at issue in rendering an extended term sentencing determination under HRS §§ 706-662(1),(3), and (4)[11] implicate

---

[10](...continued)
to correct an illegal sentence more than 90 days after the sentence is imposed shall be made pursuant to Rule 40 of these rules. A motion to correct a sentence that is made within the 90 day time period shall empower the court to act on such motion even though the time period has expired.

[11]   HRS § 706-662 (Supp. 2001) provided, in relevant part:

A convicted defendant may be subject to an extended term of imprisonment under section 706-661, if the convicted defendant satisfies one or more of the following criteria:

(1) The defendant is a persistent offender whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.

(continued...)

[11](...continued)

  (2) The defendant is a professional criminal whose imprisonment for an extended term is necessary for protection of the public.  The court shall not make this finding unless:
    (a) The circumstances of the crime show that the defendant has knowingly engaged in criminal activity as a major source of livelihood; or
    (b) The defendant has substantial income or resources not explained to be derived from a source other than criminal activity.

  (3) The defendant is a dangerous person whose imprisonment for an extended term is necessary for protection of the public.  The court shall not make this finding unless the defendant has been subjected to a psychiatric or psychological evaluation that documents a significant history of dangerousness to others resulting in criminally violent conduct, and this history makes the defendant a serious danger to others. Nothing in this section precludes the introduction of victim-related data in order to establish dangerousness in accord with the Hawaii rules of evidence.

  (4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public.  The court shall not make this finding unless:
    (a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or
    (b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed forty years if the extended term imposed is for a class A felony.

  (5) The defendant is an offender against the elderly, handicapped, or a minor under the age of eight, whose imprisonment for an extended term is necessary for the protection of the public.  The court shall not make this finding unless:
    (a) The defendant attempts or commits any

(continued...)

> considerations completely "extrinsic" to the elements of the offense with which the defendant was charged and of which he was convicted; accordingly, they should be found by the sentencing judge . . . . The facts at issue for purposes of HRS §§ 706-662(5) and (6), however, are, by their very nature, "intrinsic" to the offense with which the defendant was charged and of which he has been convicted; accordingly, they must be found beyond a reasonable doubt by the trier of fact in order to afford the defendant his constitutional rights to procedural due process and a trial by jury.

Id. at 12-13, 72 P.3d at 484-85 (citations omitted).[12]

---

[11](...continued)

> of the following crimes: murder, manslaughter, a sexual offense that constitutes a felony under chapter 707, robbery, felonious assault, burglary, or kidnapping; and
> (b) The defendant, in the course of committing or attempting to commit the crime, inflicts serious or substantial bodily injury upon a person who is:
> > (i) Sixty years of age or older;
> > (ii) Blind, a paraplegic, or a quadriplegic; or
> > (iii) Eight years of age or younger; and
> (c) Such disability is known or reasonably should be known to the defendant.

> (6) The defendant is a hate crime offender whose imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:
> > (a) The defendant is convicted of a crime under chapter 707, 708, or 711; and
> > (b) The defendant intentionally selected a victim or, in the case of a property crime, the property that was the object of a crime, because of hostility toward the actual or perceived race, religion, disability, ethnicity, national origin, or sexual orientation of any person.

[12]     In 2003, Kaua filed a habeas corpus petition in the United States District Court for the District of Hawaiʻi, requesting that the district court vacate his sentence. Kaua v. Frank, 350 F. Supp. 2d at 849-50, 855-56. In his petition, Kaua challenged this court's conclusion that a judge, rather than a jury, was permitted to satisfy the second stage of HRS § 706-662(4)'s sentencing process, regarding the necessity of protecting of the public. Id.
(continued...)

Respectfully, our analysis in Kaua erroneously concluded that despite the Court's clear holding in Apprendi, this court's intrinsic/extrinsic factor analysis still remained valid.[13]  102 Hawaiʻi at 12-13, 72 P.3d at 484-85.  Specifically,

_____

[12](...continued)
at 850-53, 855-56.  The district court granted Kaua's petition, holding that this court's affirmance of his extended sentence was "contrary to, and involved an unreasonable application of Apprendi."  Id. at 861.  The Ninth Circuit affirmed, rejecting this court's "intrinsic[/]extrinsic" analysis as a "variant of the 'element-sentencing factor' distinction that Apprendi explicitly rejected."  Kaua v. Frank, 436 F.3d at 1062.

Although the analysis of the federal courts in Kaua is consistent with our conclusions here, we are not bound by those decisions and accordingly analyze the issues independently.

[13]     The Dissent states, "I agree with several federal courts of appeal that the date should be placed after the Supreme Court decided Blakely and Booker."  Dissent at 18-19.  It is important to note that, when evaluating state court decisions, federal courts address this issue under a higher standard than state courts.  Federal courts are making a determination whether a state court's decision is contrary to or an unreasonable application of established federal law, as determined by the U.S. Supreme Court.

> [A] state court decision is contrary to clearly
> established Federal law, as determined by the Supreme
> Court, when the state court arrives at a conclusion
> opposite to that reached by the Supreme Court on a
> question of law, or when the state court confronts
> facts that are materially indistinguishable from a
> relevant Supreme Court precedent and arrives at a
> result opposite to the Supreme Court.
>
> A state court decision is an unreasonable application
> of clearly established Federal law, as determined by
> the Supreme Court of the United States when the state
> court identifies the correct governing legal rule from
> Supreme Court cases, but unreasonably applies it to
> the facts of the particular case, or when the state
> court either unreasonably extends a legal principle
> from Supreme Court precedent to a new context where it
> should not apply or unreasonably refuses to extend
> that principle to a new context where it should apply.
> The unreasonable application clause requires the state
> court decision to be more than incorrect or erroneous.
> The state court's application of clearly established
> law must be objectively unreasonable.

(continued...)

22

we characterized <u>Apprendi</u> as stating the following:

> [A] finding that the defendant committed the charged offense with a biased purpose, of necessity, required an assessment of the 'elemental' facts upon which the indictment was based. That being the case, the <u>Apprendi</u> Court held that findings that implicated 'elemental' facts requisite to imposing an enhanced sentence must be charged in the indictment, submitted to the jury, and proved by the prosecution beyond a reasonable doubt.

<u>Id.</u> at 12, 72 P.3d at 484 (citations omitted).

Accordingly, we asserted that the "facts at issue in rendering an extended term sentencing determination under HRS § 706-662(1), (3), and (4) implicate considerations completely 'extrinsic' to the elements of the offense with which the defendant was charged . . . . [and thus] fell outside the <u>Apprendi</u> rule." <u>Id.</u> at 12-13, 72 P.3d at 484-85.

In reaching that conclusion about the importance of facts being "elemental" rather than "extrinsic," this court appeared to rely on language in <u>Apprendi</u> that responded to the State of New Jersey's argument that a finding of racial bias under the hate crime statute involved nothing more than the "traditional 'sentencing factor' of motive." <u>Id.</u>; <u>see</u> <u>Apprendi</u>, 530 U.S. at 492-93. Specifically, the Court in <u>Apprendi</u>

---

[13](...continued)
<u>Kaua</u>, 350 F. Supp. 2d at 855-56 (brackets, ellipses, quotation marks and citations omitted).

Even under this higher standard, the federal district court and the Ninth Circuit concluded that our decision in <u>Kaua</u> was contrary to <u>Apprendi</u>. <u>See</u> <u>supra</u> n.12.

disagreed with the State's suggestion that the hate crime statute required "simply an inquiry into 'motive,'" noting that "[t]he defendant's intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense 'element.'" 530 U.S. at 492-93.

However, the Court in Apprendi immediately went on to explain that the characterization of the required finding did not matter, and to repeat the holding of the case:

> The foregoing notwithstanding, however, the New Jersey Supreme Court correctly recognized that it does not matter whether the required finding is characterized as one of intent or of motive, because "[l]abels do not afford an acceptable answer." That point applies as well to the constitutionally novel and elusive distinction between "elements" and "sentencing factors." Despite what appears to us the clear "elemental" nature of the factor here, the relevant inquiry is one not of form, but of effect-does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?

Apprendi, 530 U.S. at 494 (citations omitted) (emphasis added).

Therefore, we hold that the line of demarcation is Apprendi, not Booker or Cunningham, in determining whether extended term sentences imposed without jury findings are subject to collateral attack. Accordingly, we correct the conclusion in Loher and subsequent opinions that the "legal landscape only became clear after Apprendi (2000), Blakely (2004), and Booker (2005), [were] taken together." Loher v. State, 118 Hawaiʻi 522, 538, 193 P.3d 438, 454 (App. 2008). To the extent that our prior

24

opinions and the ICA's prior opinions are contrary to our holding, they are now overruled.[14]  Here, a judge, and not a jury, made the required finding that Flubacher's extended term sentence was necessary for the protection of the public.  That "required finding expose[d] the defendant to a greater punishment than that authorized by the jury's guilty verdict."  Apprendi, 530 U.S. at 494.  Therefore, Flubacher's extended term sentences were imposed in an illegal manner because they violate Apprendi.

The Dissent suggests that the rule in Apprendi "was not clear" because the Supreme Court subsequently granted certiorari in Blakely and Booker.  Dissent at 5-9.  Respectfully, the issues addressed in those cases were not needed to clarify the invalidity of this court's extrinsic/intrinsic analysis.  Blakely involved the distinct question of whether Apprendi applied to an extended sentence which did not exceed the statutory maximum in a state court proceeding, while Booker addressed a similar issue in the context of the federal sentencing guidelines.  Accordingly, cases addressing whether those decisions announced "new" rules for purposes of retroactivity analysis are irrelevant to assessing the validity of Hawaii's sentencing scheme.

---

[14]  These cases include Kaua, 102 Hawaiʻi 1, 72 P.3d 473; Rivera, 106 Hawaiʻi 146, 102 P.3d 1044; Maugaotega I, 107 Hawaiʻi 399, 114 P.3d 905; White, 110 Hawaiʻi 79, 129 P.3d 1107; Loher, 118 Hawaiʻi 522, 193 P.3d 438; and, for example, Mara v. State, 139 Hawaiʻi 414, 420 n.8, 391 P.3d 1236, 1242 n.8 (App. 2017) (citing ICA opinions).

### IV. Conclusion

For the foregoing reasons, we conclude that Flubacher's extended term sentences were imposed in an illegal manner. Therefore, we vacate the ICA's October 13, 2016 Judgment on Appeal, the circuit court's April 2, 2015 Order Denying Petition, the portion of the circuit court's September 12, 2003 Judgments and Sentences in Cr. Nos. 01-1-2788, 01-1-2789, 02-1-0089, 02-1-0090, and 02-1-0125 that imposed extended term sentences, and the circuit court's Order Granting Motion for Extended Term of Imprisonment filed September 22, 2003. We remand this case for further proceedings consistent with this opinion.[15]

John M. Schum
for petitioner

Stephen K. Tsushima
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



---

[15]  Flubacher maintained that his sentence should be vacated, and that he should be resentenced without being subject to extended term sentencing. However, based on the reasoning in Jess, we reject that argument. See Jess, 117 Hawaiʻi at 406-15, 184 P.3d at 158-67 (finding that upon remand, the State may move for an extended term sentence, and the circuit court may empanel a jury to make the necessary findings to determine petitioner's sentence).