**\*\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-26118
08-MAR-2023
08:09 AM
Dkt. 18 OPA**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

JASON K. PERRY, Petitioner/Defendant-Appellant,

and

RYAN H. ONUMA, DELANEO K. PUHA, JAMISON MITCHELL, MARVIN T. CADIZ, VAUGHN N. KAAUMOANA, and DAVID V.C. MAGALEI, Defendants.

SCWC-26118

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(NO. 26118; CASE NO. 1PC021000796)

MARCH 8, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY EDDINS, J.

**I.**

A jury found Jason Perry guilty of two murders that occurred several days apart. Then, answering special verdict forms, the jury found that he committed one murder as a

principal and accomplice, and the other murder as an accomplice. For purposes of a mandatory minimum term in the second murder, the jury answered an interrogatory. It found Perry had possessed or used a semi-automatic firearm while engaged in the offense.

The trial court enhanced each of Perry's murder in the second degree (second-degree murder or murder) prison terms beyond the ordinary statutory maximum. And it ran those sentences consecutively. Perry is serving two consecutive life without the possibility of parole terms.

Perry argues that his second-degree murder conviction based only on accomplice liability should be reversed. Perry did not shoot anyone, his argument runs, and because the jury found that he possessed a semi-automatic firearm during the crime, the guilty verdict was "irreconcilably inconsistent."

Perry also maintains that the court unlawfully enhanced his two second-degree murder prison terms. He says the court made factual findings to support a sentence beyond the ordinary statutory maximum, violating his right to a jury trial. Perry further claims that his simultaneous murder convictions were not "previous convictions" that subjected him to enhanced terms of imprisonment under Hawaiʻi Revised Statutes (HRS) § 706-657 (Supp. 1998).

We reject Perry's arguments. First, the jury's verdict was not irreconcilably inconsistent. Second, the two guilty verdicts established that Perry was "previously convicted" of second-degree murder, a finding detached from the right to a jury trial.

## II.

In one indictment the State charged Jason Perry with two counts of murder in the second degree. The State alleged he had committed two murders, days apart, each violating HRS § 707-701.5 (1993). The second involved the shooting death of a possible witness to the first murder. Both counts charged Perry as a principal and accomplice.

In 2003, the Circuit Court of the First Circuit tried Perry separately from several co-defendants. One of those co-defendants cut a deal and testified at trial for the State against Perry. Perry testified, too. Both were present at the shooting death of the possible witness. They pointed fingers in count 2, saying the other was the triggerman.

The jury found Perry guilty of murder in the second degree in count 1. The foreperson signed and dated a guilty as charged verdict form. The jury also answered two questions. On a "Special Verdict" form, the jury found that Perry had committed murder in the second degree "by his own conduct." It also found that Perry had committed murder in the second degree "by the

3

conduct of another person for which he is legally accountable." Thus, the jury concluded that Perry had committed the first murder both as a principal and an accomplice.

Count 2 also resulted in a murder in the second degree verdict. Like count 1, the foreperson signed and dated a guilty as charged verdict form, and the jury answered a special verdict form. Unlike count 1, the jury did *not* find that Perry had committed murder in the second degree "by his own conduct." The jury, however, did find that he had committed murder in the second degree "by the conduct of another person for which he is legally accountable." Thus, the jury concluded that Perry committed the second murder as an accomplice.

That should have been it for count 2. No more questions asked or answered. The court however gave a mandatory minimum semi-automatic firearm interrogatory. After the verdict form's "guilty as charged in Count 2 of Murder in the Second Degree" language, the court queried:

> Has the prosecution proven beyond a reasonable doubt that on or about the 26th day of January, 2002, in the City and County of Honolulu, State of Hawaii, the Defendant, Jason K. Perry, had a semi-automatic firearm in his possession or threatened its use or used a semi-automatic firearm while engaged in the offense of Murder in the Second Degree?

The jury answered "Yes."

The court and parties saw a disconnect. Citing Garringer v. State, the State pointed out there is no mandatory minimum term based on a firearm enhancement for an accomplice to murder.

4

80 Hawaiʻi 327, 334-35, 909 P.2d 1142, 1149-50 (1996) (precluding mandatory minimum term sentence based on HRS § 706-660.1(3) (1993) unless defendant personally possessed or threatened use of a firearm). The State declined to move for a mandatory minimum. The circuit court commented that "a reasonable inference" for the interrogatory's answer was that the jury found Perry possessed a firearm based on accomplice liability. Ultimately, the court decided the interrogatory didn't matter; the State couldn't and wasn't moving for a mandatory minimum term in count 2.

The State moved for consecutive term sentencing and extended sentencing per HRS §§ 706-656 (1993 & Supp. 1998) and 706-657. In both counts the circuit court increased second-degree murder's ordinary life with the possibility of parole sentence to life *without* the possibility of parole. Then, the court ran Perry's two murder convictions consecutively.

Perry appealed. In a 2007 Summary Disposition Order, the Intermediate Court of Appeals rejected his six points of error. Perry's attorney filed a petition for writ of certiorari a few days late. This court denied his petition; it was untimely.

Fifteen years later Perry resuscitated his appeal. On his own, he filed a Hawaiʻi Rules of Penal Procedure Rule 40 post-conviction relief petition. His appellate counsel, Perry wrote, had missed the cert application deadline and was ineffective. A

new circuit court judge agreed. The court appointed counsel. The ICA, in turn, vacated its May 18, 2007 Judgment and "re-enter[ed] judgment on the Summary Disposition Order, entered April 26, 2007." Perry could seek cert and appeal the ICA's decision.

Perry did, and we accepted his cert application.

## III.

Perry raises two points of error. First, he argues that the jury's verdict in count 2 was ambiguous and inconsistent. Second, he argues the court enhanced his sentences by making factual findings, thereby violating his right to a jury trial.

## A.

Perry does not decry the court's substantive offense and accomplice liability instructions. Rather, he argues that count 2's verdict form created ambiguity because the court placed the mandatory minimum firearm interrogatory on it. He also argues that the jury's verdicts were inconsistent.

First, Perry maintains that "the inclusion of the firearm question on the verdict form pertaining to guilt misled the jury into believing that that question must be answered as part of the finding of guilt." He believes "the court created ambiguity by embedding the firearm enhancement question into the finding of guilt."

6

We disagree.  Looking at the court's instructions together, its placement of the mandatory minimum-related special interrogatory on the verdict form was not "prejudicially insufficient, erroneous, inconsistent, or misleading."  See Stanley v. State, 148 Hawaiʻi 489, 500, 479 P.3d 107, 118 (2021).

The court's jury instructions detailed the elements of second-degree murder and the elements of accomplice liability.  Heeding the court's instructions, the jury unanimously found that the State had proven each element of murder in the second degree in count 2.  Then it selected the guilty as charged verdict form.  The verdict form signaled the jury's beyond a reasonable doubt finding in the shooting murder.  We are unconvinced that the jury felt it had to answer a non-elemental firearms question "as part of" its guilty verdict or that placing this question on the verdict form created an "ambiguity" with the jury's guilty verdict.

Next, Perry maintains that the guilty verdict and the special verdict were "irreconcilably inconsistent."  Perry understands that "courts should attempt to first reconcile seemingly-inconsistent verdicts before vacatur."  State v. Bringas, 149 Hawaiʻi 435, 443, 494 P.3d 1168, 1176 (2021).  But citing Garringer, Perry says "[t]he court's attempt to reconcile the inconsistent verdict fails because it was legally impossible for the jury to find Mr. Perry guilty of the firearm enhancement

7

based on the possession of the firearm by an accomplice." How, Perry seems to ask, could a jury convict him as an *accomplice* to a shooting murder and at the same time find he possessed or used a semi-automatic firearm?

Reasonably, we believe. And if there's "a reasonable way to reconcile" a jury's findings, then a conviction stands. Bringas, 149 Hawaiʻi at 443, 494 P.3d at 1176 (explaining "[t]he requirement that an appellate court search for any reasonable way to reconcile a jury's verdicts serves to avoid speculation into the jury's confidential deliberations and to safeguard the result of those deliberations, if at all possible.")

An accomplice to murder can possess a firearm during the criminal event without pulling the trigger. And a person can be convicted of a shooting-related murder without pulling the trigger. See HRS § 702-221 (1993) ("A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both. . . . A person is legally accountable for the conduct of another person when: . . . He is an accomplice of such other person in the commission of the offense."); HRS § 702-222 (1993) ("A person is an accomplice of another person in the commission of an offense if: (1) With the intention of promoting or facilitating the commission of the offense, the person: (a) Solicits the other person to commit it; (b) Aids or agrees or

8

attempts to aid the other person in planning or committing it").

The jury's verdict was not irreconcilably inconsistent. Contrary to Perry's position, it was *not* legally impossible for the jury to find the State had proven the elements of murder in the second degree based on accomplice liability and that Perry had possessed a semi-automatic firearm. Garringer does not make Perry's scenario legally impossible for purposes of an accomplice's murder conviction. Rather, Garringer just makes it impossible for an accomplice to receive a mandatory minimum term under HRS § 706-660.1 for possessing a semi-automatic firearm. Id. 80 Hawaiʻi at 334-35, 909 P.2d at 1149-50.

Also, a semi-automatic finding is unnecessary to a second-degree murder verdict. It does not touch any element to murder in the second degree. Bringas, 149 Hawaiʻi at 444, 494 P.3d at 1177 (jury finding regarding mitigating defense of "mutual affray does not negate any element of [second-degree murder]."") The inessential interrogatory did not impact the jury's verdict in count 2 (recited on both the guilty as charged verdict form and the special verdict form) that Perry committed each element of murder in the second degree.

Lastly, the State did not move for a mandatory minimum in count 2. So the interrogatory did not prejudice Perry.

**B.**

We turn to Perry's enhanced sentencing argument.

9

There are only two ways that a person convicted of violating HRS § 707-701.5, murder in the second degree, may receive a life without the possibility of parole sentence: when (1) "the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity" or (2) "the person was previously convicted of the offense of murder in the first degree or murder in the second degree[.]"  HRS § 706-657.

Perry argues the court unlawfully sentenced him to life without the possibility of parole in counts 1 and 2.  He contends: (1) the jury, not the judge, should have found that he "was previously convicted" of murder and (2) "previously convicted" means prior – not contemporaneous – murder convictions.

Perry also argues that the court violated his right to a jury trial in count 1 because it remarked that the victim "was tortured before she died" and Perry's "actions and decisions were cruel and reprehensible."  He claims these statements show that the court fact-found to enhance his sentence, and fact-finding is for the jury, not the judge.

First, we address Perry's right to jury trial argument. Since his conviction occurred after Apprendi v. New Jersey, 530 U.S. 466 (2000), he may raise a challenge based on this issue. Flubacher v. State, 142 Hawaiʻi 109, 118, 414 P.3d 161, 170 (2018) (holding that Apprendi, is "the line of demarcation" for

10

"determining whether extended term sentences imposed without jury findings are subject to collateral attack").

Under the Sixth Amendment and article I, section 14 of the Hawaiʻi Constitution, a jury, not a judge, makes the factual findings used to impose a sentence beyond the offense's ordinary statutory maximum. See Apprendi, 530 U.S. at 494; Flubacher, 142 Hawaiʻi at 118-19, 414 P.3d at 170-71. But using prior or concurrent convictions to exceed a statutory max is different. Convictions float outside the constitutional ambit. A judge may make those findings without violating the jury trial right. Apprendi, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); State v. Maugaotega, 115 Hawaiʻi 432, 446 n.15, 168 P.3d 562, 576 n.15 (2007) (describing the "prior-or-concurrent-convictions exception" as facts which have already been subject to the jury trial right and been proven beyond a reasonable doubt.)

Perry's simultaneous convictions mean that no jury fact-finding was needed to enhance his sentences. The jury found beyond a reasonable doubt that Perry committed murder in the second degree – twice. It didn't need to find anything more for Perry to be eligible for enhanced sentencing under HRS § 706-657. And the court didn't need to find anything beyond those

11

convictions to determine that Perry "was previously convicted of the offense of murder in the first degree or murder in the second degree." HRS § 706-657.

We turn to Perry's position that the court violated his jury trial right in another way. At the sentencing hearing, the court remarked that before Perry killed the victim in count 1, she was "tortured." The court also described Perry's actions as "cruel and reprehensible." Those comments, Perry believes, show that the court fact-found, and thereby unconstitutionally enhanced his sentence per HRS § 706-657's "the murder was especially heinous, atrocious, or cruel, manifesting exceptional depravity" provision.

Perry is mistaken. The court did not effectively find that he had committed a "conscienceless or pitiless crime which is unnecessarily torturous to a victim." HRS § 706-657. Before its sentencing remarks, the court had already imposed the life without the possibility of parole sentences. HRS § 706-657's "previously convicted" criteria supported the enhanced sentence. So only one question remained: Would counts 1 and 2 run concurrently or consecutively?

The court made its comments within the context of HRS § 706-606 (1993) and the State's motion for consecutive sentencing. Courts consider the "nature and circumstances of the offense" at every sentencing hearing. HRS § 706-606(1).

12

And when it comes to a consecutive sentence, the court "shall consider the factors set forth in section 706-606." HRS § 706-668.5(2) (1993).

Perry's argument in this respect fails another way. The State moved for enhanced sentencing based on Perry's conviction for two murders. Not because he killed a person in an "especially heinous, atrocious, or cruel, manifesting exceptional depravity" way.

Lastly, Perry says counts 1 and 2 are not "previous convictions." Perry argues that "previous conviction" means a *prior* murder conviction; that is, a murder conviction that occurred *before* another murder conviction. Because the jury convicted Perry of two murders at once, his argument goes, how can the murder convictions defy time and happen "previously"?

That's a cogent argument. Until HRS § 706-657 is read. In 1996, the legislature defined "previously convicted" as "a sentence imposed *at the same time* or a sentence previously imposed which has not been set aside, reversed, or vacated." (Emphasis added.) "The legislature's intent was to permit a court to sentence a defendant to life imprisonment without the possibility of parole when the defendant commits two or more murders." Commentary to HRS § 706-657 (citing S. Stand. Comm. Rep. No. 2592, in 1996 Senate Journal at 1210; H. Stand. Comm. Rep. No. 221-96 in 1996 House Journal at 1122-23). As the

13

legislature put it: "The bill now clarifies that two murders, regardless of when the person formulated the intent or state of mind to kill the two persons, permits the court to sentence a person convicted of two murders to life imprisonment without parole." S. Stand. Comm. Rep. No. 2592 on H.B. No. 2620 in 1996 Senate Journal at 1210.

## IV.

We affirm the ICA's October 7, 2022 Judgment on Appeal and the July 28, 2003 Judgment in the Circuit Court of the First Circuit.

| | |
|---|---|
| Cynthia A. Kagiwada<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Steven K. Tsushima<br>for respondent | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Todd W. Eddins |

